## STATE EX REL. A. J. VEIGEL AND OTHERS v. HARDSTONE BRICK COMPANY OF LITTLE FALLS, INC. AND OTHERS.[1]

August 12, 1927.

No. 26,200.

**Petition for mandamus did not assign good reason for examination of defendant's records.**

Where the sale of registered securities has been temporarily suspended pending a hearing on an order to show cause why such registration should not be canceled and, prior to the hearing, the corporation which procured the registration requests a cancelation thereof, it should not thereafter be compelled by writ of mandamus to produce to the commerce commission its records and papers for examination without some good and adequate reason for such examination being stated in the petition for the writ. The hope that an investigation and examination of such records and papers may reveal a violation of the law pertaining to the sale of securities is not a good or adequate reason.

Licenses, 37 C. J. p. 272 n. 67, 69 New.
Pleadings, 31 Cyc. p. 338 n. 8.

Relators appealed from an order of the district court for Ramsey county, Hanft, J., overruling their demurrer to respondents' return to an alternative writ of mandamus. Affirmed.

*Clifford L. Hilton,* Attorney General, *G. A. Youngquist* and *Ernest C. Carman,* Assistant Attorneys General, for appellants.

*John J. Keefe,* for respondents.

HOLT, J.

The appeal is from an order overruling the demurrer of relators to respondents' return to an alternative writ of mandamus, the court below certifying the question presented to be important and doubtful.

The relators constitute the state commerce commission and respondents are the Hardstone Brick Company of Little Falls, a cor-

[1]Reported in 215 N. W. 186.

poration, and its officers.   The facts stated in the petition for the writ are:

The respondent corporation registered with the commission a certain amount of its stock for sale on July 28, 1926, the sale of which was duly authorized to be made within the state, and of which thereafter more than $100,000 par value was made; that on August 27, 1926, the commission served an order on respondents requiring a financial statement from the corporation of receipts and disbursements, a list of names of stockholders and the amount of stock held by each, and the names of all agents who sold stock and the names and addresses of each person to whom stock was sold; that respondents failed to do so; that on January 25, 1927, the commission designated persons to audit the books of the corporation and ordered it to submit all its books and records to such auditors for examination; that respondents refused to submit its books and records to such auditors; and to compel respondents to forthwith produce such books and records for examination and audit the alternative writ of mandamus was requested.   The writ was issued.

The answer or return of respondents thereto was, in substance, that on August 24, 1926, the commission suspended the registration of the corporation's stock and terminated the right to sell the same pending further action of the commission, and ordered respondents to show cause September 14, 1926, why the registration should not be canceled; that on September 1, 1926, the corporation duly requested the commission to cancel its registration of stock; that none of its stock was sold prior to its registration, and that none thereof has been sold or has been offered for sale since August 24, 1926; that respondents did not appear to oppose the order of the commission to show cause why its license to sell its stock should not be revoked; that the commission has purposely refrained from making the order of revocation; and respondents deny the jurisdiction of the commission to examine its books and records and invoke §§ 7 and 10 of art. 1 of the state constitution and the fourth and fifth amendments of the federal constitution in bar to the writ asked.

A demurrer searches all preceding pleadings. There is no allegation in the petition of any specific violation of law during the period the stock of the respondent corporation was authorized to be sold; its sale was by order of the commission suspended; the demurrer admits that before the hearing respondents duly requested a revocation of the right to sell stock, and that no stock was sold before it was registered, and none was sold or offered to be sold after the order of suspension. Hence, the only purpose now for an examination of the records and papers of the corporation is to discover if perchance any violation of law occurred while the license to sell was in force.

Chapter 192, p. 197, L. 1925, is entitled: "An act to prevent fraud in the sale of securities within the state of Minnesota by regulating the offer for sale and sale thereof, by requiring registration of such securities and licensing of persons selling or offering securities for sale;" and providing for penalties for violations. The right to examine the records of the corporation is to be found in §§ 8 and 19 of the act. Section 8 provides that in connection with any registration outstanding the commission may call for any information deemed necessary to determine whether such registration should remain in force, including an examination of the records of the issuer of the stock; and it may issue orders to show cause why registration should not be revoked, and after final hearing the commission shall enter its order vacating the order or modifying the terms of registration or permanently revoking the same.

"A registration may be cancelled by the commission at any time at the request of the person for whom such registration was made."

Section 8 can hardly be applicable here, for when a cancelation of the registration has been requested by the one who procured the same there is really no outstanding registration to investigate for the purpose of determining whether it should be kept in force.

Section 19 empowers the commission to investigate and determine whether any securities, including securities exempted from registration, are fraudulent or being sold in a fraudulent manner, or whether any provisions of the act are being violated, and to take

steps to prosecute those guilty of violations. The commission may issue subpoenas and require the attendance of witnesses and the production of books and papers. A natural person thus compelled to testify has immunity against any prosecution, except for perjury in giving such testimony.

The power given the commission is drastic, but so long as it is exercised to protect the public against fraudulent securities it should not be hampered. When, however, the securities are withdrawn and the issuer has requested the cancelation of the registration, there is no longer any occasion to protect the public against their sale. Then there remains only the meting out of punishment, if to obtain registration or while it was in force any person connected with such securities violated the law. As the pleadings now are, with no charge of any specific violation of the law in the petition for the writ, the proceeding herein savors strongly of a "fishing expedition." If someone has violated the law, the ordinary methods of obtaining evidence to convict ought to suffice.

The commission argues that, since it has power under § 19 to require an issuer or seller of securities exempted from the registration and license provisions of the act to submit to an examination of the books and records of the business, there is more reason to hold that it has power to compel the issuer or seller of registered securities to produce books and records for examination, even though the registration has been suspended and the party who obtained the same has requested its cancelation. When the purpose of the law is kept in view, namely to prevent the sale of fraudulent securities and the fraudulent sale of securities, there seems to us to be a marked distinction between the two classes of securities.

In the case of securities exempted from registration the duty of the commission is continuous to guard against fraudulent sales thereof, but as to those required to be registered the commission is to investigate their character before registration to ascertain whether inherently they are honest and not fraudulent, so that the public in buying them receive the value they purport to represent; and so long as the sale is permitted the power to investigate and to demand the production of books and records undoubtedly con-

tinues. But when the right of sale is suspended and the one who obtained the registration and license demands the cancelation and revocation thereof, there is no longer any occasion to resort to an examination of books and papers in order to protect the public against either a fraudulent sale of such securities or a sale thereof, whether they be good or bad.

Respondents argue that since they did not appear to oppose the order to show cause why the registration should not be permanently suspended and the license to sell revoked, and had prior to the hearing demanded a revocation, the commission was required to enter an order of revocation forthwith. The commission, on the other hand, contends that the last paragraph from § 8, above quoted, in respect to cancelation and revocation at the request of the one who obtained the registration of the securities, is permissive and not mandatory—that the commission may retain jurisdiction with full power of investigation even though a request for cancelation has been made in order to institute prosecution if evidence of any violation of the law is acquired.

It is not necessary now to determine which contention is right, for it does appear to us that after such a demand for cancelation has been made some good reason for not complying therewith should be adduced by the commission before it should have the right to compel the corporation involved to produce its books and papers for examination. As already stated, here is none. No specific violation of law is charged. The only reasons for demanding an audit and the production of the books and papers are thus stated in the petition for the writ:

"The audit and examination by the Commerce Commission of the books, records, papers and accounts of the defendant corporation is necessary in order that the Commerce Commission may determine whether said registration of the securities of defendant corporation should remain in force, and in order to determine whether any of the provisions of the law heretofore cited or any of the provisions of said registration are being violated by the defendants; and it is the duty and the right of the Commerce Commission to make such audit and examination."

The last clause is a pure conclusion of law. The first reason no longer exists, for the defendant corporation has requested that the registration be terminated; and likewise the second, for no provisions of the law "are being violated" when the license to sell is withdrawn and no offer to sell had been made for months prior to the institution of this proceeding as admitted by the demurrer.

The law is salutary, Kerst v. Nelson, 171 Minn. 191, 213 N. W. 904. But its drastic provisions should not be called into operation except upon adequate legal grounds. Federal Trade Comm. v. American Tobacco Co. 264 U. S. 298, 44 S. Ct. 336, 68 L. ed. 696, 32 A. L. R. 786, where the commission, as here, claimed an unlimited right of access to the respondent's papers "with reference to the possible existence of practices in violation of" law, it was denied such right, Mr. Justice Holmes saying:

"Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire (Interstate Commerce Commission v. Brimson, 154 U. S. 447, 479, 14 S. Ct. 1125, 38 L. ed. 1047) and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime."

The commission cite as authorities for their position Dunham v. Ottinger, 243 N. Y. 423, 154 N. E. 298, and In re MacNamara, 128 Misc. 84, 218 N. Y. S. 57. It is not claimed that they are exactly in point, and we do not see that they furnish much support to either party in this controversy. The New York law does not require registration of securities or authority or license to sell. So the point here made by respondents could not there arise, viz. that their request for a cancelation of the registration and revocation of the right to sell being terminated under the allegations of the pleadings, as admitted by the demurrer, left the commission without adequate reason for compelling the production of the respondent corporation's books and papers for examination.

The order overruling the demurrer is affirmed.