**SECURITIES AND EXCHANGE COMMISSION v. HOOVER et al.**

**No. 112.**

District Court, N. D. Illinois, E. D.

Nov. 10, 1938.

Wm. McNeil Kennedy, Regional Director, of Chicago, Ill., for Securities and Exchange Commission.

Leonard L. Cowan, of Chicago, Ill., for respondents.

**HOLLY, District Judge.**

Upon application of the Securities and Exchange Commission, pursuant to sec. 22(b) of the Securities Act of 1933, 15 U.S. C.A. sec. 77v(b), for an order requiring Harper S. Hoover and others to appear, testify and produce documentary evidence before the commission in obedience to subpoenas duces tecum heretofore issued.

Respondents Hoover and Joerns appeared before the Commission, but refused to testify; respondent Kellogg failed to appear in response to the subpoena's mandate.

Respondents are officers of Resources Corporation International, a Delaware corporation, whose principal place of business is located at Chicago, Illinois. On February 28, 1938, Resources Corporation International filed with the Securities and Exchange Commission a registration statement setting forth details involving 35,000 shares of its common stock owned by respondent Hoover. The Act provides that such a statement shall become effective twenty days after it is filed. Section 8(a), 15 U.S.C.A. § 77h(a). The rules of the Commission provide that: "Sundays and holidays shall be counted in computing the effective date." Rule 930. The twentieth day in this case (March 20, 1938) fell on a Sunday. On the following day, the Commission sent telegraphic notice to Resources Corporation International, informing it that an order had been issued on that day, directing that a hearing be held on a speci-

fied future date to determine whether a stop order should be issued to suspend the effectiveness of the registration statement which had been filed by the corporation.

Hearings were held from time to time, and various books, papers and documents of the corporation were produced. On May 19, 1938, after the hearings had proceeded at some length, Resources Corporation International filed a motion for leave to withdraw its registration statement. An amended motion to the same effect was filed on May 23, 1938. On May 24, 1938, a hearing on the amended motion was held, and on the next day the motion was denied without prejudice to renew it at the termination of hearings then pending with respect to the registration statement. The Commission based its denial on the ground that the evidence then before it could not sustain a finding as required by Rule 960[1] of the General Rules and Regulations under the Securities Act of 1933, that withdrawal of the registration statement would be consistent with public interest and the protection of investors. The record in the stop order proceedings held up to this point disclosed that more than 650,000 shares of the stock of Resources Corporation International were outstanding in the hands of approximately 2,500 members of the public; that no registration of these shares had been made under the provisions of the Act, some of said 650,000 shares having been sold prior to 1933 and some afterwards; and that the 650,000 shares outstanding were being actively traded in over-the-counter markets.

Upon refusal of respondents to testify on the ground that denial of the amended motion of Resources Corporation International to withdraw its registered statement was without warrant of law, the Securities and Exchange Commission filed its application in this court for an order requiring respondents to comply with the terms of the subpoenas it had issued. It is the theory of the respondents that the corporation had an unqualified legal right to withdraw its registration statement, and that when it attempted to exercise its right the Commission was powerless to further proceed.

The parties cite the following cases relative to the right of a registrant to withdraw a statement previously filed: State ex rel. Veigel v. Hardstone Brick Co., 1927, 172 Minn. 328, 215 N.W. 186, Northwest Bancorporation v. Benson, D.C. 1934, 6 F.Supp. 704, and Jones v. Securities and Exchange Commission, 1936, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015.

The contention of respondents in this case is apparently sustained in the first decision cited, but denied in the second.[2] However, neither case is controlling here. The decisions in the Hardstone Brick Co. and Northwest Bancorporation Cases involved provisions of the Minnesota Securities Act. That statute—one of a series of Blue Sky Laws inaugurated in a number of the states—is similar in purpose, but not identical in scope or operation, with the Securities Act now under consideration.

The respondents insist, however, that their position is sustained by the decision of the Supreme Court in Jones v. Securities and Exchange Commission, supra. In that case, one Jones filed a registration statement with the Securities and Exchange Commission. Nineteen days later, the Commission issued notice that stop order proceedings would be instituted. A date for hearing was set but was continued until a later time. Between the first and second dates set for the hearing, a subpoena duces tecum was issued. On the latter date, counsel for Jones presented a formal request for withdrawal of the registration statement. The request was denied.

[1] Rule 960—Withdrawal of Registration Statement or Amendment Thereto—"Any registration statement or any amendment thereto may be withdrawn upon the application of the registrant if the Commission, finding such withdrawal consistent with the public interest and the protection of investors, consents thereto. The application for such consent shall be signed by the registrant and shall state fully the grounds upon which made. The fee paid upon the filing of the registration statement will not be returned to the registrant. The papers comprising the registration statement or amendment thereto shall not be removed from the files of the Commission but shall be plainly marked with the date of the giving of such consent, and in the following manner: 'Withdrawn upon the request of the registrant, the Commission consenting thereto.'" General Rules and Regulations under the Securities Act of 1933.

[2] The apparent inconsistency of the two decisions may be traced to the fact that the Minnesota statute was amended in 1933, after the opinion handed down in the Hardstone Brick Co. Case and before that rendered in Northwest Bancorporation v. Benson.

An application, filed in the District Court, for an order requiring Jones to appear before the Commission and present evidence in the matter of the registration statement was granted. The Circuit Court of Appeals affirmed the order. On appeal, the Supreme Court held that Jones had a right to withdraw his registration. In so holding, it was declared that the stop order proceedings instituted by the Commission were in the nature of an injunction; and that since the registration was no longer effective it could be withdrawn, in the absence of a showing that the rights of others would be prejudiced thereby.

The Court relied upon the common law rule that "a plaintiff possesses the unqualified right to dismiss his complaint at law or his bill in equity unless some legal prejudice will result to the defendant other than the mere prospect of a second litigation on the subject matter."

While the Supreme Court recognized a regulation of the Commission which provides that a registration statement may be withdrawn if consent thereto is granted and the necessary consent "shall be given by the commission with due regard to the public interest and the protection of investors," it found the regulation inapplicable to the facts before it, saying: "We are unable to see how any right of the general public can be affected by the withdrawal of such an application before it has gone into effect. Petitioner emphatically says that no steps had been taken looking to the issue of the securities; and this is not denied. So far as the record shows, there were no investors, existing or potential, to be affected. The conclusion seems inevitable that an abandonment was of no concern to anyone except the registrant." 56 S.Ct. 660.

In the Jones Case, three facts stand out: (1) Notification of the stop order proceeding was issued prior to the date upon which the registration would have become effective; (2) No stock of the registrant had been sold previously, and therefore the rights of investors had not become involved; (3) The request for withdrawal was made after a subpoena had been issued, but before any hearings had been held.

Unlike the Jones Case, notification of the stop order proceeding in this case was issued after the registration statement had become effective.[3] Unlike the Jones Case, too, the registrant in the case at bar voluntarily submitted to the jurisdiction of the Commission, and not until hearings had been partially completed was any attempt made to withdraw. To permit withdrawal at this stage of the proceedings would grant immunity to the registrant and effectively deprive the Commission of its investigatory powers. The discretionary authority to determine whether or not reasonable grounds for continuing an investigation exist would be taken from the Commission and placed solely at the disposal of the registrant. It would permit the latter party to terminate proceedings whenever it felt that the investigation of the Commission would reveal facts which, for any reason, it did not wish to be disclosed, even though the full disclosure of those very facts might be in the greatest public interest. And finally, perhaps the most important distinction existing between this and the Jones Case lies in the fact that various issues of the same stock which the registrant here proposed to issue had been placed upon the market and sold prior to the time the registration statement was filed.[4] The mere fact that the particular stock registered had not been sold prior to or after registra-

---

[3] This distinction has been acted upon by the Securities and Exchange Commission In the Matter of Oklahoma-Texas Trust, Release No. 1563, September 23, 1937. It was said there: " * * * This case is clearly differentiated from the Jones Case, Jones v. Securities and Exchange Commission, 1936, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015. There the statement never became effective nor had the rights of investors become involved, whereas here the statement had been in effect for a year and a half and present certificate holders are now interested to the extent of over $900,000. Since the certificates of this registrant are issued and outstanding and are thus subject to further purchase through the mails and interstate commerce, the rights of future potential investors to adequate and accurate information have come into being. Under these circumstances, consent to withdraw would not be consistent with the intervening public interest and the protection of the investors. The application to withdraw must be denied."

[4] The Securities and Exchange Commission has adhered to the principle that it will not entertain an application to withdraw an effective registration statement unless it is shown that no public offering of the registered securities has been or

tion is unimportant. The stock had been issued to an official of the corporation; other shares of the same issue had been sold both by the corporation and the official to members of the investing public. Under these circumstances, a large number of investors exist and their rights are a matter of actuality. They are entitled to the information and protection which would result from an investigation of these securities by the Commission. Public interest and need for protection, which were non-existent in the Jones Case, are matters of vital concern and reality here.

The order prayed for in the application of the Securities and Exchange Commission will be issued.

will be made. (In the Matter of Paper Sales Company of Detroit, Inc., 2 S.E.C. -(1937).

This rule was relaxed In the Matter of Seneca Petroleum Corporation, Release No. 1720, April, 1938. In that case, although some of the shares registered had been issued to officers, directors and the underwriter, withdrawal of the application statement which had previously become effective was permitted even after stop order proceedings had been instituted because no shares had been sold or offered for sale to the public.