## RESOURCES CORPORATION INTERNATIONAL v. SECURITIES AND EXCHANGE COMMISSION et al.

### No. 7218.

United States Court of Appeals for the District of Columbia.

Argued Dec. 6, 1938.

Decided Feb. 27, 1939.

George P. Hoover and James R. Murphy, both of Washington, D. C., for appellant.

Thomas J. Lynch, Robert E. Kline, Jr., and Chester T. Lane, all of Washington, D. C., for appellees.

Before GRONER, C. J., and MILLER and VINSON, JJ.

GRONER, C. J.

Plaintiff (appellant) is a Delaware corporation and through stock ownership controls various other corporations owning, leasing, and selling timber and ranch lands in the Republic of Mexico. On July 5, 1938, it filed in the District Court its bill in equity against the Securities and Exchange Commission and the individual commissioners. The court on motion of the Commission dismissed, and this appeal followed.

The bill alleged that on February 28 plaintiff filed with the Commission a registration statement covering 35,000 shares of its common stock owned by Harper S. Hoover, treasurer and chairman of its board. At that time there were outstanding in the hands of the public approximately 650,000 similar shares. On Sunday, March 20, 1938, the registration became effective under the provisions of Section 8(a) of the Securities Act of 1933, as amended.[1] On March 21 the Commission gave notice to plaintiff pursuant to Section 8(d) that the statement apparently included untrue statements of material facts, etc., and that a hearing would be given at the office' of the Commission on April 5 at 10 o'clock A. M.[2] On April 2 plaintiff and Harper S. Hoover, as owner of the shares, agreed with the Commission that none would be sold or offered for sale pending determination of the stop order proceedings. The hearing was then continued to April 19, 1938.

---

[1] The Securities Act of 1933, 48 Stat. 74, as amended by Act June 6, 1934, 48 Stat. 881, 15 U.S.C. 77a et seq., 15 U.S.C.A. § 77a et seq.

Sec. 8(a) "The effective date of a registration statement shall be the twentieth day after the filing thereof * * *." 15 U.S.C.A. § 77h(a).

[2] Section 8(d) provides that the Commission may, if the registration statement includes any untrue statement of material fact, etc., within 15 days after

Hearings were begun April 19 and lasted until April 30 in Chicago. Plaintiff in obedience to the demand of the Commission produced certain of its books and records, and on April 30 the hearing was adjourned to the office of the Commission in Washington to be resumed May 16, 1938. Photostatic copies of plaintiff's records were made by the Commission, and these copies are now in the latter's possession. It is alleged that during the course of the hearings the Commission caused to be prepared and distributed to newspapers untrue and misleading statements with respect to evidence which the Commission expected to adduce at the hearings; that it gave access to the list of plaintiff's stockholders to attorneys and others in no way connected with the Commission or properly entitled to obtain the same; that the Commission's agents and employees engaged in a campaign of scurrilous, misleading, and untrue statements concerning the plaintiff and its officers, and sought to encourage its shareholders to institute suits and causes of action against it and its officers and directors, and encouraged one Magnus Brinkman and his wife to institute a receivership suit in the courts of Illinois. These allegedly illegal acts of the Commission agents, together with the political unrest in the Republic of Mexico and the expropriation by that Government of foreign owned properties, so unsettled the market for its securities as to cause a shrinkage in value of its stock from approximately $11 per share to $1.75 to $2.50 per share. These things and the ensuing consequences caused it to lose interest in its proposed offering of shares for sale, and it so informed the Commission, as a result of which the chairman and a member of the Commission suggested that it should file a formal application for the withdrawal of the registration statement. Acting on this advice, it filed with the Commission its formal application for withdrawal, and subsequently, on notification of the Commission, amended its application to conform to the requirements of the Commission's Rule 960.[3] On May 24 there was a hearing before the Commission, at which plaintiff's witnesses testified in substantiation of its stated reasons for withdrawal. On May 25 the Commission, relying on Rule 960, entered an order reciting that it had duly considered the matter and had concluded "that the evidence before it at this time does not support a finding that such withdrawal would be consistent with the public interest and the protection of investors", and refused to permit the registration to be withdrawn. Plaintiff thereupon applied to the Commission to postpone the further hearing set for May 31, and upon denial petitioned the Court of Appeals of the Seventh Circuit for a review of the Commission's order of May 25. The Court of Appeals, after hearing, dismissed the petition for lack of jurisdiction. 97 F.2d 788. Immediately upon dismissal the Commission gave notice of its purpose to proceed with the hearings. Plaintiff thereupon moved for a continuance on various grounds more or less similar to those which it had urged prior to its court appeal. The motion was denied, and the hearings were finally set for July 6.

Plaintiff's bill, in addition to the allegations we have noticed, charges that the intent and object of the Commission in persisting in its efforts to conduct further hearings was to enable the Commission to continue to retain possession and custody of its books and to subject it and its business affairs to "a fishing expedition"; to harass it and to give publicity to matters relating to its business and affairs by means of unfounded and misleading press releases; and through the unlawful acts of its agents to coerce its customers to refrain from dealing with it and thus to interfere with the lawful conduct of its business in the negotiation and consummation of contracts for cutting of timber and the carrying out and performing of its existing law-

---

notice and after opportunity for hearing, issue a stop order suspending the effectiveness of the registration statement. 15 U.S.C.A. § 77h(d).

[3] Rule 960. Any registration statement or any amendment thereto may be withdrawn upon the application of the registrant if the Commission, finding such withdrawal consistent with the public interest and the protection of investors, consents thereto. The application for such consent shall be signed by the registrant and shall state fully the grounds upon which made. The fee paid upon the filing of the registration statement will not be returned to the registrant. The papers comprising the registration statement or amendment thereto shall not be removed from the files of the Commission but shall be plainly marked with the date of the giving of such consent, and in the following manner: "Withdrawn upon the request of the registrant, the Commission consenting thereto * * * "

ful contracts; and generally to obstruct it and prevent it from carrying on its business. This combination of alleged unlawful acts, plaintiff claimed, had resulted and will continue to result in its irreparable loss, damage, and injury.

The bill prayed for an injunction restraining the Commission from holding or conducting any hearings and taking any action or proceedings in the matter of plaintiff's pending application for registration; from prosecuting any proceeding to compel obedience to any order or causing to be enforced against plaintiff, its officers, etc., any fines or penalties for failure to comply with any order; and prayed that the Commission's order denying plaintiff's application to withdraw the registration statement be declared unlawful; that a mandatory injunction issue requiring the Commission to set aside its order and to enter such orders as will permit the withdrawal of the statement, and to surrender and deliver up all of plaintiff's records and all copies thereof.

A rule to show cause was entered on plaintiff's motion, and subsequently the Commission moved the court to dismiss on the ground that the bill failed to allege facts sufficient to constitute a cause of action in equity. There was a hearing, and on July 19 the trial judge filed a memorandum in which he expressed the opinion that the Commission's action in refusing to permit the withdrawal of the registration statement was interlocutory only; that plaintiff would have a right of appeal from a final order; and that that remedy was, in the circumstances, exclusive. On this ground the bill was dismissed, and this appeal followed.

Plaintiff's contention that the Commission's order of May 25 is invalid rests on the assumption that it had an unqualified right at any time prior to the sale of its registered shares to withdraw the registration and thus—to the damage of no one—restore the status quo. The assumption in turn is based upon the claim that the statute itself contains no restriction respecting the terms and conditions under which the registration may be withdrawn, and therefore that Rule 960 is invalid because the Commission has no authority to implement the statute in that respect. Plaintiff's registration, as we have seen, was filed February 28, and by virtue of Section 8(a) became effective on Sunday, March 20. The proceedings under the stop order provision were begun the following day. The Commission's notice to it, plaintiff insists, suspended the effectiveness of the registration and, since no sale of registered shares had then been consummated, the case is brought directly within the terms of the decision in Jones v. Securities & Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015.

The position of the Commission, on the other hand, is that, the registration being effective, the commencement of the stop order proceedings did not suspend the registration nor prohibit the sale of stock; that the latter result was possible only through a final order and that in the circumstances the Commission was bound by its rule, on the application for withdrawal, to weigh and consider the public interest.

If the question were one of first impression, we would have no difficulty in declaring Rule 960 reasonable and within the Commission's rule-making power. Nor would we have any greater difficulty in the present circumstances in sustaining a proper finding by the Commission of public interest as conclusive. But since the question arose and was discussed at length by the Supreme Court in the Jones case, it is necessary to examine that opinion to determine whether the facts there are so nearly parallel with the present case as to make the conclusion binding upon us.

The registration in the Jones case related to unissued securities and had been on file for less than the statutory 20-day period when the stop order proceedings were begun. The present registration, on the other hand, related to securities already issued and outstanding and had ripened into an effective license to use the mails and facilities of interstate commerce before the Commission took any action. In holding that Jones had an absolute right to withdraw, the Supreme Court, as we think, rested its decision squarely on factors which differentiate that case from this. Since there the initiation of stop order proceedings prevented the registration from becoming effective, and since in that case there were no outstanding securities to give the public or any third person an interest, Jones was considered merely an applicant for a license and, like a plaintiff in a court, he could withdraw unless some legal prejudice would result.

Here the basic facts of that case are absent, and consequently the decision is not controlling. It is true the present

registration relates to only 35,000 shares of a large issue, and that Section 6(a) of the Act, 15 U.S.C.A. § 77f(a), expressly limits the effectiveness of the registration to the securities specified in it. And it is also true that here none of the registered shares had been sold or offered for sale. But, although the absence of affected investors in both cases may make the difference between the Jones case and this seem at first more evanescent than real, the other factor, namely, that the present registration had gone into effect, constitutes the vital distinction. And so, while it may be true from a purely practical point of view that the effect upon "potential" investors was not different in either case, it does not follow that the voluntary abandonment of the application after its effective date was of no concern to the general public or to anyone except the registrant. We think the Act should not be so delimited. We reach this conclusion on the ground that the Act is designed, through the imposition of penalties, to insure fair dealing and good conduct—at the source—on the part of those who seek and obtain the use of the mails and the other instrumentalities of commerce in the sale of securities to the public. To make the purpose effective, the Act provides in Section 24, 15 U.S.C.A. § 77x, that any person who wilfully makes an untrue statement of a material fact in a registration statement is guilty of a crime punishable by a fine of $5,000 or imprisonment for not more than five years, or both. If our view of the purpose of the legislation is correct, it will be seen at a glance how ineffective the penalty provision would become if it be conceded that the registrant who has got the benefit of registration may, when charged with fraud in its procurement, withdraw and put an end to the inquisitorial powers of the Commission and escape the consequences of his wrong on the ground that no investor has suffered. In short, we think that Congress in the enactment of the statute was legislating in the public interest and not solely for the protection of a potential investor in shares of stock; that the test of the right of withdrawal is the absence of prejudice to the public or to investors and not the absence of prejudice to investors alone. The finding of the Commission that the withdrawal would not be consistent with public interest, coupled as it was with specific notice to plaintiff of the respects in which the application appeared to contain untrue statements, was enough to bring into operation the investigatory functions of the Commission; and in such circumstances those functions may not be rendered impotent by voluntary abandonment on the theory that it is a matter in the sole concern of the registrant.

In view of the foregoing, we have not found it necessary to consider the point stressed by the Commission that the bill should be dismissed because it does not sufficiently show that the plaintiff has exhausted the administrative provisions of the Act. In passing upon a similar contention, the Supreme Court very recently said, in Utah Fuel Company v. National Bituminous Coal Commission, 59 S.Ct. 409, 411, 83 L.Ed. ——, decided January 30, 1939, that "the jurisdiction of a District Court is to be 'determined by the allegations of the bill, and usually if the bill or declaration makes a claim that if well founded is within the jurisdiction of the Court it is within that jurisdiction whether well founded or not.'" In that case the Supreme Court sustained jurisdiction in the District Court in an injunction proceeding to restrain the Coal Commission from making public certain so-called confidential information required to be furnished by the Commission, on an allegation in the bill that the publication would result in irreparable damage to the furnishers. The bill in the present case contains a similar allegation, but we think we need not trace the parallel further to discover whether there is also a sufficient allegation that plaintiff has exhausted its administrative remedies, for the result would be the same in any case, since, as we hold, it has failed to state an equitable cause of action in the respects first discussed, and on that ground the dismissal of the bill must be affirmed.

Affirmed.