COLUMBIA GENERAL INVESTMENT
CORPORATION, Petitioner,

v.

SECURITIES AND EXCHANGE COM-
MISSION, Respondent.

No. 17218.

United States Court of Appeals
Fifth Circuit.

April 6, 1959.

Jack Binion, Houston, Tex., Smith W. Brookhart, Washington, D. C. (Percy D. Williams, Butler, Binion, Rice & Cook, Houston, Tex., Brookhart, Becker & Dorsey, Washington, D. C., of counsel), for petitioner.

Joseph B. Levin, Atty., S. E. C., Thomas G. Meeker, Gen. Counsel, S. E. C., George P. Michaely, Jr., Attorney, S. E. C., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is a Petition for Review of a stop order issued by the Securities and Exchange Commission suspending a registration by Columbia General Investment Corporation (Columbia) for the sale of 100,000 shares of stock at a specified price. Columbia's principal contention is that SEC lacked jurisdiction to issue the stop order because, prior to the effective date of the registration, Columbia voluntarily requested its withdrawal. This was, it claims, its absolute right, unfettered by any agency discretion whether innate or pursuant to SEC's express regulation 477.[1] If that result was not automatically required as of the time of the notice of the stop order hearing, Columbia next asserts that it became such by the subsequent filing of a substantive amendment which SEC had mandatorily to accept under Section 8 (a).[2] A somewhat subsidiary but related contention is that SEC denied Columbia an effective opportunity for penitence and voluntary adjustment under Section 5(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(b).

In this frontal attack no question is raised about the sufficiency of the evidence to sustain the findings of SEC. Hence, in reviewing the power of SEC to require and conduct the stop order proceedings, we accept as an established fact that the statements in the registration "were materially misleading" as to Columbia, its affiliate Columbia General Life Insurance Company (whose stock constituted a significant part of Columbia's asserted assets), Thomas E. Hand, Jr., J. Ed Eisemann III, (the promoters and moving figures in these two corporations as well as others involved) and the Columbia Securities Company, (a sole proprietorship set up by one of them for

1. "Any registration statement or any amendment or exhibit thereto may be withdrawn upon application if the Commission, finding such withdrawal consistent with the public interest and the protection of investors, consents thereto. The application for such consent shall be signed and shall state fully the grounds upon which made. The fee paid upon the filing of the registration statement will not be returned to the registrant. The papers comprising the registration statement or amendment thereto shall not be removed from the files of the Commission but shall be plainly marked with the date of the giving of such consent, and in the following manner: 'Withdrawn upon the request of the registrant, the Commission consenting thereto.'" Rule 477, adopted June 9, 1947, but substantially the same as the Rule first promulgated September 22, 1933, 17 C.F.R. § 230, 477 (1949).

2. "Sec. 8(a) Except as hereinafter provided, the effective date of a registration statement shall be the twentieth day after the filing thereof or such earlier date as the Commission may determine, having due regard to the adequacy of the information respecting the issuer theretofore available to the public, to the facility with which the nature of the securities to be registered, their relationship to the capital structure of the issuer and the rights of holders thereof can be understood, and to the public interest and the protection of investors. If any amendment to any such statement is filed prior to the effective date of such statement, the registration statement shall be deemed to have been filed when such amendment was filed; except that an amendment filed with the consent of the Commission, prior to the effective date of the registration statement, or filed pursuant to an order of the Commission, shall be treated as a part of the registration statement." 15 U.S.C.A. § 77h(a).

the purpose of maintaining and stabilizing the market in Insurance Company stock). The SEC's report contained an elaborate discussion of the details of many transactions, no part of which is questioned and upon which these sweeping condemnations were based.

As Columbia has chosen this narrow approach, only few facts are relevant and may be swiftly summarized. Columbia filed a Registration on March 29, 1956. Ordinarily it would have become effective 20 days thereafter. Section 8(a), note 2, supra. But by a succession of permissible "delaying amendments" [3] the effective date was repeatedly postponed. Prior to the effective date, Columbia, on June 27, 1956, requested consent of SEC to withdraw the Registration pursuant to Rule 477, note 1, supra. SEC denied this on June 29 and simultaneously issued an order for hearing under Section 8(d),[4] as well as other sections of the Act,[5] for July 10, 1956. By agreement the hearing was postponed. On August 15, a few days prior to the adjourned hearing, Columbia filed a substantive amendment to the Registration, together with a request for postponement of the hearing to permit examination of the amendment by the staff of SEC and for a conference with the staff thereafter. This was followed August 20 with another formal application to withdraw the Registration,

and this was formally renewed after the Examiner's report. By these means and a formal motion to dismiss, Columbia adequately preserved its basic contention of lack of jurisdiction in SEC and alternatively an abuse of discretion under Rule 477, note 1, supra, if it were legally applicable.

As the alpha and omega of its argument, as its constant rod and staff, Columbia cleaves to Jones v. Securities & Exchange Commission, 1936, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015, as absolutely controlling. We agree with Columbia that, in the final analysis, the case is decisive, although in quite a different way from its contention. Columbia asserts that it is the classic case of a perfectly matching precedent which on stare decisis compels reversal. Because the case is emphatic in its ruling, our approach is to determine whether on facts and subsequent statutory developments, the parallel is really there. Finding differences of sufficient character, we conclude that the case is not mandatorily controlling. Once we determine that our action is not precisely circumscribed by Jones, we have no doubt that the orders of SEC withstand the attacks made here.

In Jones the registrant, on the 19th day, one day prior to the effective date, requested permission of SEC to with-

**3.** A "delaying amendment" is an amendment filed solely for the purpose of preventing a registration statement from becoming effective. Rule 473 of SEC's rules provides: "An amendment altering the proposed date of the public sale may be made by telegram or letter." 17 C.F.R. § 230.473 (1949). Columbia periodically filed amendments changing the proposed offering date to a date to be "decided upon" or "determined" after the effective date of the registration statement.

**4.** "(d) If it appears to the Commission at any time that the registration statement includes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statement therein not misleading, the Commission may, after notice by personal service or the sending of confirmed telegraphic notice,

and after opportunity for hearing (at a time fixed by the Commission) within fifteen days after such notice by personal service or the sending of such telegraphic notice, issue a stop order suspending the effectiveness of the registration statement. When such statement has been amended in accordance with such stop order, the Commission shall so declare and thereupon the stop order shall cease to be effective." 15 U.S.C.A. § 77h(d).

**5.** The order recited that the hearing and investigation was being ordered pursuant to Sections 5, 8(d), 17(a) and 20(a) of the Securities Act of 1933, 15 U.S.C.A. §§ 77e, 77h(d), 77q(a), 77t(a), Sections 10 (b), 15 and 21(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78j(b), 78(o), 78u, and Sections 7 and 42(a) of the Investment Company Act of 1940, 15 U.S.C.A. §§ 80a–7, 80a–41(a).

draw the Registration statement under the predecessor of Rule 477. This was denied and the SEC undertook to hold a stop order hearing. On registrant's refusal to attend the hearings, SEC sought and obtained in the district court orders compelling attendance and production of records. After affirmance by the Court of Appeals, the Supreme Court reversed. After concluding that notice of a stop order hearing by SEC had the effect of keeping the Registration from becoming effective, the Court then analogized the resulting situation to an equitable action in which, save for rare extraordinary factors not there present, the plaintiff has the unconditioned right of dismissal prior to answer, it held that the registrant had the absolute right to withdraw the Registration statement prior to its effective date.

Although invited by SEC to reject Jones because the Supreme Court [6] itself has cast great doubts on the continued vitality of the case—a possibility which this Court [7] and others have discussed—and then treat it as impliedly overruled,[8] we find it unnecessary to accept or decline the invitation. Accepting the opinion we think there are substantial grounds for distinguishing it from our own situation.

The facts are different in at least one substantial and significant respect. In Jones, the Court emphasized that "so far as the record shows, there were no investors, existing, or potential, to be affected. The conclusion seems inevitable that an abandonment of the application was of no concern to anyone except the registrant." 298 U.S. at page 23, 56 S.Ct. at page 660.

▆▆▆ That stands in sharp contrast to the record here. Approximately 1800 members of the public now hold over 63,000 shares of the class of security covered by the Registration. The stockholders, as well as those members of the investing public who may have occasion to trade in these outstanding shares, are the proper subject of the official concern of SEC. Oklahoma-Texas Trust v. S.E.C., 10 Cir., 1939, 100 F.2d 888. Persons other than those who purchase the new stock under the Registration may be affected in point of fact and may, under certain circumstances, have remedies in point of law for misrepresentations in a Registration. Fischman

6. In United States v. Morton Salt Co., 1950, 338 U.S. 632, 642, 70 S.Ct. 357, 364, 94 L.Ed. 401, the Court remarked: "More recent views have been more tolerant of [the administrative process] than those which underlay many older decisions. Compare Jones v. S.E.C., 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015 with United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211."

7. In Lansky v. Savoretti, 5 Cir., 1955, 220 F.2d 906, 909–910, this Court observed: "The district judge in the Minker case correctly pointed out that it is a far cry in time and a farther one in substance from the days of administrative exuberance,[5] to put it mildly, and from Jones v. Securities and Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L. Ed. 1015, with its organlike denunciations of, and Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288, with its milder preachments against administrative usurpation and absolutism, to the decision in United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401, and to the present, when the

Administrative Procedure Act,[6] 5 U.S. C.A. § 1005, and the decisions giving it effect, have brought substantially all administrative actions and their review within the compass of the Administro-Judicial Process."

Footnotes 5 and 6 refer to Judging as Administration, Administration as Judging, 21 Texas L.Rev. (Nov. 1942), and New Instruments of Public Power, Alexander F. Morrison Lectureship Foundation, Proceedings of the 1946 Annual Meeting, California State Bar.

See also Bowles v. Misle, 1946, D.C.D. Neb., 64 F.Supp. 835, 841.

8. See, e. g., Browder v. Gayle (3 judge district court), D.C.D.Ala.1956, 142 F. Supp. 707, 716, especially footnote 14, discussing Barnette v. West Virginia State Board of Education (3 judge district court), D.C.S.D.W.Va.1942, 47 F. Supp. 251, 252–253; Fleming v. South Carolina Electric & Gas Company, 4 Cir., 1955, 224 F.2d 752; Perkins v. Endicott Johnson Corp., 2 Cir., 1942, 128 F.2d 208, 217–218.

v. Raytheon Manufacturing Company, 2 Cir., 1951, 188 F.2d 783, 787. The dual object of the statute is to require public disclosure and widespread dissemination of the information disclosed and, both through these means as well as the strong civil and criminal sanctions, prevent and punish fraud in the issuance of securities.[9] Its aim is to obtain an informed and "honest dealing in securities." [10]

This factor of outstanding stock of the same class as proposed in the Registration statement has been regarded by others as a significant variation from Jones. See Resources Corporation International v. S.E.C., 1939, 70 App.D.C. 58, 103 F.2d 929, 931; S.E.C. v. Hoover, D.C.N.D.Ill.1938, 25 F.Supp. 484, 486–487; Oklahoma-Texas Trust v. S.E.C., 10 Cir., 1939, 100 F.2d 88, supra. That there were also other distinguishing factors does not detract from the emphasis all put on the protection of outstanding stockholders as well as the public who might trade in those shares.

Moreover, since Jones there has been at least one significant change in the law. This reflects that, in the Congressional scheme, it is no longer, in the words of the Court, an inevitable conclusion that " * * * an abandonment of the application was of no concern to anyone except the registrant." 298 U.S. at page 23, 56 S.Ct. at page 660. In its original form the Act, Section 5, prohibited the sale or *offer* for sale of any security until the registration became effective. Under the 1954 amendments a registrant may make *offers to sell* after filing but before the registration statement becomes effective.[11]

This is particularly significant in view of the practical consequences of the administrative liberality in allowing delaying amendments, see note 3, supra. Under this practice a registrant may file a statement and then postpone its final legal effectiveness by advancing the specified effective date. During all of that time the Registration serves as the basis for exploiting the ultimate sale through offers to sell and solicitation of offers to buy. On the basis of the filing the prospectus, within the limits of the statute and regulations, may be widely circulated and solicitation campaigns of varying intensity may be carried on. Certainly during that period the public has a great stake. More important, the registrant is using the very facilities of SEC and the mechanism of registration as a valuable phase in its sales promotion. Of course, in the Jones pre-1954 amendment era, this could not have been done for until the effective date of the registration statement neither sales nor offers to sell could be made.

If, as Columbia urges, the registrant has the unfettered right to withdraw up to the effective date, the machinery of the Commission, established by Congress to provide truth and honesty in securities, may become the very instrument of deception and fraud. Those engaged in enterprises to bilk either the stupid, the credulous, or the intelligent who may be overly persuaded by optimistic propaganda, will, in exploiting the show of legality which the filing affords, find no difficulty in overcoming the impediment to a final sale which withdrawal brings about. Not the least of these possibilities is the subsequent dealing in outstanding shares with those whose inter-

9. The preamble of the Act states the statute's purpose is "To provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes." 48 Stat. 74.

10. H.Rep. No. 85, 73d Conv., 1st Sess., p. 2 (1933).

11. Concerning this amendment both Senate and H. Reports stated:

"The statute as now in effect contemplated that the registration statement would become effective before the sellers of securities could engage in sales activities. * * * In substance, Section 5, as amended by this bill, permits the making of offers, but not sales, * * * prior to the effective date." S.Rept. No. 1036, pp. 14–15, H.Rept. No. 1542, p. 23, 83d Cong., 2d Sess. See Whittaker v. Wall, 8 Cir., 1955, 226 F.2d 868, 871.

est has been excited or piqued by the prospectus, the disposition of the underlying assets of the proposed enterprise (especially if the company were to engage in mineral explorations), or the issuance of the same securities within the limits of Regulation A. What form the deceit could or might take cannot be blueprinted. It is only certain that the measure of its skillfulness would be in proportion to the extent to which its confectors would give it the appearance of legality. One court has remarked, "The business of trading in securities is one in which opportunities for dishonesty are of constant recurrence and ever present. It engages acute, active minds, trained to quick apprehension, decision, and action." Archer v. S.E.C., 8 Cir., 1943, 133 F.2d 795, 803. This is but an elaboration of the brief, but pungent, expression of Judge Holmes for this Court in Weiss v. United States, 5 Cir., 1941, 122 F.2d 675, 681, certiorari denied, 314 U.S. 687, 62 S.Ct. 300, 86 L. Ed. 550, that fraud is "as old as falsehood and as versable as human ingenuity." Abbott v. United States, 5 Cir., 1956, 239 F.2d 310, 314.

The impact of the 1954 amendments is graphically demonstrated in connection with Regulation A, 17 C.F.R. §§ 230.230–.262, promulgated pursuant to Section 3 (b), 15 U.S.C.A. § 77c(b) of the Act. Subject to certain requirements that Regulation provides an exemption from registration for offerings of securities not exceeding $300,000. Since the investing public is not assured the public disclosure from a registration, SEC by its Rule 252(c), 17 C.F.R. § 230.252(c) (1958 Supp.), denies Regulation A exemption with respect to a proposed issue which has been, within the past five years, the subject of a section 8 investigation or a stop order.

The issuance of a stop order because of false or misleading representations in the registration statement makes it impossible to offer any part of the securities under the Regulation A exemption. If the power to issue the stop order is lacking, the result is that, threatened with stop order proceedings, the registrant can withdraw it and then, without compunction, offer the same securities under the exemption. The vice of any such action is compounded by the fact that in the subsequent Regulation A exemption offer, the issuer could exploit to its maximum the psychological misapprehension that having been once filed with SEC and the official record being "clean" the securities are safe and sound. Oklahoma-Texas Trust v. S.E.C., 10 Cir., 1939, 100 F.2d 888, 892. That is especially true since, through delaying amendments, the registrant could keep the official filing alive for a long period during which time the prospectus could rightfully be used in promoting the offers to sell.

Once we have determined that SEC had the power to decline the application for withdrawal, we are of the positive view that Columbia has not demonstrated any abuse of SEC's discretion in the actual denial. The principal argument seems to be that as so much emphasis was placed on shareholders of present, outstanding stock of the same class, that public interest is nonexistent since none of such stockholders has brought suit for the misrepresentation. But as we view it, the matter is more comprehensive than the possible availability of civil sanctions to outstanding stockholders. The public has a real stake, both as to this stock and in a larger sense. Those to whom existing stock will or might be offered, whether by insiders or unrelated holders, are protected by the public disclosure of an official declaration that with respect to that very stock, the registration has subsequently failed to disclose contingent liabilities. On the larger scene, the public interest is served because it stands as a deterrent to the filing of registrations by an issuer indifferent to the accuracy or honesty of the statement because he knows that if caught, or nearly caught, or threatened with being caught, or even investigated, he can withdraw the offensive statement at will. As a stop order prevents this, it will indeed

promote truth in securities, and that is what Congress intended.

■ That leaves then the claim concerning the substantive amendment of August 15, 1956. If Columbia's complaint was that SEC abused its discretion in not allowing the amendment, we would quickly state that Columbia has failed to demonstrate any such abuse. But Columbia does not so contend. Its brief reflects categorically that it "contends that the substantive amendment filed * * * on August 15 * * * terminated, for the purposes of the stop-order proceedings, the legal significance of the registration statement as originally filed, and that after such amendment, the registration statement as originally filed was entitled to no further consideration in the stop-order proceedings. * * * Under Section 8(a), the substantive amendment, once filed, constituted the only form of registration statement on file which the Commission lawfully could consider in these proceedings." In short it contends that the original registration statement has disappeared from view.

The premise for this claim is that under Section 8(a), note 2, supra, where an amendment is filed before the effective date of the registration, the "statement shall be deemed to have been filed when such amendment was filed." On this, the argument is made that with the filing of the amendment, the original filing evaporates since nothing was "deemed to have been filed" until the date of the amendment.

We find this without any merit. Section 8(a) deals with the *effective* date, i. e., the time at which it is lawful to sell the securities. It deals wholly with *time*, and the effect in point of *time* of an amendment. Under the statutory scheme this has to be fixed with precision. It is not intended to supplant the general definition of Section 2(8), 15 U.S.C.A. § 77b(8), that the "term 'registration statement' means the statement provided for in section 6, and includes any amendment thereto and any report, document, or memorandum filed as a part of such statement or incorporated therein by reference."

The construction sought by Columbia would leave SEC with power (as we have held above) but powerless to act. This would follow because on its theory all the registrant need do to forestall the stop order proceeding is to file a substantive amendment. That process would be endless for on a stop order notice as to the first substantive amendment, the registrant would need file only a second, and so on ad infinitum. In the meantime promoters, traders, confidence men, and the assorted hangers-on of such enterprises could be using the amendments further to postpone the effective date to enable them to achieve the maximum appearance of legitimacy and legality. This would make a farce out of the statute. And we must reject a construction which would have that effect.

■ If Columbia's complaint under Section 5(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(b), that adequate opportunity was not afforded to confer informally, is asserted independently of the contention just discussed on the effect of the substantive amendment, we think that no abuse of discretion by SEC has been demonstrated. The notice of hearing was issued June 29. The hearing was set for July 10 and postponed by agreement. There is no showing why the request for further postponement was delayed until almost the eve of the adjourned hearing. Nor is there any showing to indicate that postponement on conference would have been fruitful or would have obviated or simplified the subsequent formal hearing. The matters to be covered were specified in great detail and the evidence heard under it appears to have covered in like detail all of the dealings and transactions by Columbia, the Insurance Company, Hand, Eisemann and the others, upon which the stop order was based.

We are not told whether Columbia thought that in the informal conference it could have persuaded the staff of SEC

that the facts were other than those subsequently found, that such facts were irrelevant *if true*, or that, as it did in argument here, SEC had no power to make the investigation or withhold consent to withdrawal of the statement. On the latter Columbia had at the outset taken its stand on Jones as was its right. We do not think that SEC necessarily had to tender an informal conference to ascertain whether Columbia really meant this. On the contrary, we think SEC had a right to accept the gage with the hopes of success which it has now made good.

Affirmed.

CAMERON, Circuit Judge.

I concur in the result.