In re Appeal of Ohio Radio, Inc.: Peltier, Appellant, v. Ohio Radio, Inc., Appellee.

(No. 395—Decided December 18, 1970.)

*Mr. Paul W. Brown,* attorney general, and *Mr. Charles S. Rawlings,* for appellant.

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman,* for appellee.

POTTER, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Ottawa County. That court, after an appellate hearing pursuant to R. C. 119.12, reversed an order of the Division of Securities. The order of the division had revoked the registration by qualification of certain stock of Ohio Radio, Incorporated, appellee, filed under date of July 24, 1967, File No. 22065, being 190,000 shares of class A common stock, no-par value, to be sold at the public offering of $5 per share.

The division previously, by order dated July 3, 1969, made certain findings among which were that Ohio Radio, Incorporated, had violated the terms of its registration and the laws, rules and regulations administered by the division, had engaged in fraudulent conduct in regard to purchasers, and was insolvent. It ordered the immediate suspension of the registration by qualification and further ordered that the appellee should show cause why the registration should not be revoked. A hearing on the merits of the findings of the Division of Securities was set for July 14, 1969, and continued at the request of the appellee to August 6, 1969. On that date, after opening statements by the hearing officer, who was the Chief of the Division of Securities and Director of Commerce, and by the assistant attorney general, the appellee, by its counsel, denied all of the allegations of the suspension order and professed no wrongdoing. Counsel for appellee further advised that after being informed of the facts, the

shareholders of the corporation, at its annual shareholders meeting on July 30, 1969, unanimously voted to discontinue all sales of class A no-par stock under the July 24, 1967 registration and, therefore, there appeared no reason to continue the hearing. After the director indicated his intention to continue the hearing, the appellee then tendered the division order dated August 7, 1967, which authorized the sale of 190,000 shares, and counsel for appellee and appellee's corporate officers left the hearing room. The hearing was held and evidence was submitted. Counsel for appellee, in a letter transmitting to the division the original certificate of registration by qualification, dated August 7, 1967, and prior to the order of the Division of Securities, asserted that:

"In view of the surrender of the certificate of registration by qualification of August 7, 1967, it is submitted that the Division of Securities is without authority to revoke said registration."

On September 5, 1969, the division, by order, revoked the registration.

The grounds for appeal to the Ottawa County Common Pleas Court were, as follows:

"1. The Division of Securities, on September 5, 1969, lacked jurisdiction to revoke appellant's registration by qualification of 190,000 shares of Class A common no-par stock, File No. 22065, inasmuch as the Appellant on August 6, 1969, surrendered to the Division of Securities the Certificate of Registration by Qualification, dated August 7, 1967, in File No. 22065:

"2. The Division of Securities, on August 6, 1969, after the appellant withdrew its request for a hearing respecting the suspension and revocation of its registration by qualification and withdrew from the hearing room, lacked jurisdiction to proceed with a hearing and subsequent revocation of the registration."

The Common Pleas Court considered only the question whether the administrative order was in accordance with law. The lower court in its opinion adopted the philosophy that there is little difference whether the securities certificate is revoked by the board or is surrendered and

it relied on an opinion of the Attorney General of the state of Ohio, No. 2664, dated May 15, 1934. In its journal entry, the court held that, "the appellant's surrender of its license to issue shares of class A common, no-par stock for sale to the public, stopped the revocation proceedings and that the revocation order has no force or effect and should be reversed."

The error assigned is directed to this holding and is as follows:

"The Court of Common Pleas erred in holding that the surrender by a registrant of its certificate of registration to sell stock, at a hearing convened for the purpose of determining whether to confirm or revoke a previously issued order suspending such registration, deprived the Director of Commerce of jurisdiction to proceed with such hearing and enter a final order of revocation."

The appeal to this court calls for an interpretation of R. C. 1707.13. This court has no Ohio precedent and is without Ohio assistance except for the Ohio Attorney General's opinion and general rules of statutory construction. The opinion of the Ohio Attorney General, No. 2664, although not binding on this court is not in conflict with the majority opinion of this court.[1]

Appellee relies in part on the Supreme Court case of *Jones* v. *Securities and Exchange Commission* (1936), 298 U. S. 1, 56 S. Ct. 654, 80 L. Ed. 1015. In this case, the majority of the court held that a withdrawal of a registration statement terminated the authority of the commission to proceed. The court applied the public interest test and concluded that the proposed withdrawal of registration before sale could not adversely affect investors, and the proposed Commission inquiry was in the nature of a "fishing expedition."

---

[1]Attorney General Opinion 2664. Syllabus:

"1. The Division of Securities has no authority to revoke a registration of securities either by description or qualification except pursuant to the statutes relating thereto.

"2. An applicant who has registered an issue of securities by description or qualification may withdraw same and such withdrawal may be entered upon the records of the Division of Securities."

This opinion is perhaps more honored for the dissent by Mr. Justice Cardoza and joined in by Justices Brandeis and Stone. In any event, this Supreme Court sibling never matured into a recognized member of the judicial family. See *United States* v. *Morton Salt Co.* (1950), 338 U. S. 632, 70 S. Ct. 357, and for general text comment, 1 Loss SECURITIES REGULATION 310 (1961) and Supp. 1969 at 2359. Subsequent cases have distinguished and otherwise avoided the *Jones* case. See *Peoples Securities Co.* v *Securities and Exchange Com'n* (1961), 289 F. 2d 268; *Blaise D'Antoni & Associates Inc.* v. *Securities and Exchange Comm.* (1961), 290 F. 2d 688; *Columbia General Investment Corp.* v. *Securities and Exchange Comm.* (1959), 265 F. 2d 559; *Cal. Pacific Collections, Inc.*, v. *Powers* (1969), 70 Cal. 2d 135, 449 P. 2d 225; *Wolf Corp.* v. *Securities and Exchange Comm.* (1963), 317 F. 2d 139.

R. C. 1707.13 provides that after a notice of suspension has been mailed by the division to the issuer and to all licensed dealers concerned, the division shall set a date not more than ten days later than the date of the order of suspension for a hearing on the continuance or revocation of the suspension order. Following such hearing, the division shall either confirm or revoke such suspension.

In construing the statute we are guided by the rule that a statute should be interpreted to give a reasonable result consistent with legislative purpose and intent and not to defeat that intention or to render it a nullity. Protection of the investing public is an objective of the legislation. Where stock has been sold and a suspension order issued, the division action in proceeding with a hearing was consistent with the legislative objective. The corporation does not have an option in the course of the proceedings to stop the procedure. Although the lower court holds that it could see no difference between a revocation by the Board or a surrender by the corporation, the corporation's entire purpose is to secure this difference, and as was said in the case of *Peoples Securities Co.* v. *Securities and Exchange Comm.* (1961), 289 F. 2d 268, at 275:

"There is quite a distinction in the position of one

who could say, 'I resigned' and one who says 'I was expelled.' "

In the dissent in the *Jones* case, *supra,* at page 30, Mr. Justice Cardoza said:

"Recklessness and deceit do not automatically excuse themselves by notice of repentance."

In the instant case there was no notice of repentance but an allegation of freedom from any wrongdoing. Mr. Justice Cardoza also observed, at page 32 (in *Jones, supra*):

"To permit an offending registrant to stifle inquiry by [a] precipitate retreat on the eve of his exposure is to give immunity to guilt * * *."

We think this observation is even more apropos on the morning of the hearing. The surrender by a registrant of its certificates of registration to sell stock at a hearing convened pursuant to the provisions of R. C. 1707 for the purpose of determining whether to confirm or revoke a previously issued order suspending such registration does not deprive the Director of Commerce of jurisdiction to proceed with such hearing and enter a final order of revocation.

The judgment of the lower court is reversed and vacated and the order of the Division of Securities is affirmed and the cause is remanded to the Division of Securities.

*Judgment reversed.*

STRAUB, J., concurs.

BROWN, P. J., dissenting. The judgment of the Common Pleas Court of Ottawa County reversed the revocation order of the Division of Securities issued on September 5, 1969, revoking the registration by qualification of 190,000 shares of class A common stock of appellee. The Common Pleas Court found that appellee's surrender of its certificate of registration for this stock stopped the revocation proceedings and caused the revocation order to have no force or effect.

This judgment of the Common Pleas Court should be affirmed because it is supported by the majority decision of the United States Supreme Court in *Jones* v. *Securities and Exchange Commission* (1936), 298 U. S. 1, 56 S. Ct. 654, 80 L. Ed. 1015, as expressed in paragraph seven of the syllabus, 80 L. Ed. at 1016 as follows:

"An order compelling one to appear, give testimony, and produce his private books and papers for inspection by the Federal Securities Commission in an investigation undertaken for the declared and sole purpose of determining whether a stop order should issue against a registrant ceases to be operative where a withdrawal of the registration statement has rendered a stop order unnecessary."

This same reasoning, as in *Jones* was employed to reach a similar decision by a Minnesota court involving the sale of registered Minnesota securities where the corporation requested cancellation of the registration before the hearing scheduled to show cause why such registration should not be cancelled. *State, ex rel. Veigil,* v. *Hardstone Brick Co.* (1927), 172 Minn. 328, 215 N. W. 186.

No case has been found which overrules the majority decision of the United States Supreme Court in *Jones.* Later decisions of the United States Court of Appeals in *Peoples Securities Company* v. *Securities and Exchange Comm.* (1961), 289 F. 2d 268, and *Columbia General Investment Corp.* v. *Securities and Exchange Comm.* (1959), 265 F. 2d 559, recognized the *stare decisis* consequences of the United States Supreme Court decision in *Jones,* distinguished the facts in the *Jones* case from the cases these two courts had under consideration. They stated that the court in each case especially refrained from treating *Jones* as impliedly overruled.

Although there is no judicial precedent in Ohio to support the views expressed in this dissent, support for the views herein are found in the opinion of the Ohio Attorney General, No. 2664, dated May 15, 1934, Volume 1, at 662. It states:

"The real intent of the Securities Law is to afford to the public some protection in the matter of the offering

and sales of the securities to the public. To hold that the Division of Securities must keep in their records as registered an issue of the offering of which is perhaps abandoned or withdrawn from the market does not appear to me to be adopting a construction of the law to effectuate its real object and intent."