DILLOW, Exr., Appellee,

v.

MALLARD COACH COMPANY, Appellant;  General Motors Corporation, Appellee.

[Cite as *Dillow v. Mallard Coach Co.* (1992), 83 Ohio App.3d 801.]

Court of Appeals of Ohio,
Lawrence County.

No. 91 CA 28.

Decided Nov. 20, 1992.

*Frank J. McCown,* for appellee Edna Dillow, Executor.

*Klein, Smith & Klein* and *Jeffrey M. Smith,* for appellant.

*Taft, Stettinius & Hollister* and *Timothy C. Sullivan,* for appellee General Motors Corp.

GREY, Judge.

This is an appeal from an entry of the Lawrence County Common Pleas Court granting summary judgment to Edna Dillow, Executor of the Estate of Fred W. Dillow, on the "Lemon Law" claim against Mallard Coach Company; the court also dismissed Mallard Coach's cross-claim against General Motors Corporation. We affirm in part and reverse in part.

On January 3, 1989, Fred Dillow purchased a 1988 Mallard Coach Motor Home from Cecil Caudill Trailer Sales. Mallard Coach Company manufactured the motor home upon a chassis made by General Motors.

The Dillows had many problems with the vehicle and brought it back to Cecil Caudill for service on at least eight different occasions. Fred Dillow sent a letter to Mallard Coach concerning the defects. The Dillows claimed the vehicle never ran well or properly performed as warranted by Mallard Coach.

On September 28, 1989, the Dillows filed a complaint against Cecil Caudill Trailer Sales as the seller of the motor home, against General Motors as the supplier of the chassis and frame used in the motor home, and against Mallard Coach Company as the manufacturer of the motor home. The Dillows' complaint alleged several causes of action against Mallard Coach and the other defendants, including breach of warranty, violation of the Magnuson–Moss Warranty Act, as well as violation of the Ohio Lemon Law, R.C. 1345.71 *et seq.*

Mallard filed cross-claims against General Motors and Cecil Caudill seeking indemnification or contribution. Cecil Caudill filed cross-claims against Mallard and General Motors seeking indemnification or contribution.

The Dillows filed a motion for summary judgment on their fourth claim, which alleges a violation of R.C. 1345.72 by Cecil Caudill, General Motors and Mallard Coach. The trial court denied the Dillows' motion as to General Motors and Cecil Caudill, but on May 16, 1990, the trial court granted summary judgment in favor of Fred Dillow against Mallard Coach. The court found against Edna Dillow's claim against Mallard Coach because she had no ownership interest in the motor home.

Mallard Coach appealed the May 16, 1990 entry of the trial court in *Dillow v. Mallard Coach Co.* (Mar. 28, 1991), Lawrence App. No. 1961, unreported, 1991 WL 43390. We dismissed the appeal for lack of a final appealable order because the trial court failed to make a determination as to the damages owed to Dillow. Upon remand, the trial court awarded damages to the estate of Fred Dillow, who died in December 1990, in the amount of $67,374 plus interest. The court filed that decision on November 20, 1991. This entry gives rise to appellant's first assignment of error.

All the other claims of the plaintiffs and cross-claims of the defendants were voluntarily dismissed, dismissed without prejudice, or otherwise disposed of by the court and are not relevant to this appeal.

After the Dillows' motion for summary judgment against General Motors was denied, General Motors moved to dismiss the Dillows' complaint pursuant to Civ.R. 12(B)(6) because General Motors was not the "manufacturer" of the motor home under R.C. 1345.71(B). On July 10, 1991, the trial court granted General Motors' motion. The trial court not only dismissed General Motors with prejudice as to the Dillows' claim, it also dismissed General Motors as a party without having made any determination as to Mallard's cross-claim against General

Motors. This entry, which became a final appealable order as of November 20, 1991, gives rise to the second assignment of error.

FIRST ASSIGNMENT OF ERROR

"The summary judgment rendered by the Honorable trial court in favor of the Appellee, Fred Dillow, and against Appellant, Mallard Coach Company, Inc., is contrary to Ohio R.C. § 1345.71 through 1345.77."

Mallard Coach asserts that the trial court erred in granting summary judgment to Dillow because it was not the manufacturer of a motor home subject to the Lemon Law, R.C. 1345.71 *et seq.*

The issues here are: first, whether the motor home purchased by Fred Dillow is a "motor vehicle" subject to Ohio's Lemon Law, R.C. 1345.71 *et seq.;* and second, whether Mallard Coach was the "manufacturer" of that vehicle under R.C. 1345.71 and 4517.01. We begin with an examination of the language of the applicable statutes.

R.C. 4501.01 defines "motor home" as " * * * a self-propelled recreational vehicle with permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping."

While Mallard Coach freely admits that the vehicle purchased by Fred Dillow was a motor home pursuant to R.C. 4501.01(Q)(2), it maintains that it is not liable under the Lemon Law because the language of the statute exempts motor homes.

R.C. 1345.71(D) defines "motor vehicle" as:

" * * * any passenger car or noncommercial motor vehicle as defined in section 4501.01 of the Revised Code, or those parts of any motor home, as defined in section 4501.01 of the Revised Code, that are not part of the permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping, but does not mean any manufactured home as defined in division (O) of section 4501.01 of the Revised Code or recreational vehicle as defined in division (Q) of that section."

Since it provided only those parts which are specifically excluded under the statute, *i.e.,* facilities for cold storage, cooking, eating and sleeping, Mallard asserts that General Motors, which built and supplied the chassis and undercarriage, is liable to Dillow under the Lemon Law.

It is clear from the language of the statutes above that the legislature intended to include motor homes as vehicles covered by Ohio's Lemon Law and to subject manufacturers of those motor homes to that law. But if that is the intent of the legislature, what meaning should be given the language of R.C. 1345.71(D), excepting facilities for cooking, eating, sleeping and cold storage?

■ We find the intent of the legislature was to make manufacturers liable for the defects in the motor vehicles they produce, but that the legislature was aware that often products are produced by different manufacturers, as happened here. General Motors made the chassis and frame. As such, it is liable under the Lemon Law for defects in the product it made. Mallard Coach took that frame and built cooking and sleeping facilities on it. Since General Motors has no control over the facilities which are added to its frames, it would be futile to impose Lemon Law liability on General Motors for these facilities. Thus, the language exempts the manufacturer of a motor vehicle frame from liability for defects in the cold storage, cooking, eating and sleeping facilities which are added to the frame. Simply put, General Motors is liable under the Lemon Law for defects in the product it manufactured. Mallard is liable for defects in the product it manufactured.

■ This is the most reasonable construction of what the exemption in R.C. 1345.71(D) covers. It would be an unreasonable construction to hold that motor homes are included in one clause of the statute, and then excluded in the very next clause. We reject appellant's construction that motor homes are exempt from the protections afforded consumers under the Lemon Law. We find that Dillow's motor home is therefore covered under the Ohio Lemon Law.

■ We now turn to the second portion of our inquiry—is Mallard Coach, as the manufacturer of Dillow's motor home, to be held liable for the vehicle's warranty nonconformities? We find that it is.

R.C. 1345.71(B) adopts the definition of "manufacturer" as found in R.C. 4517.01(R), which provides in pertinent part:

" * * * a person who manufactures, assembles, or imports motor vehicles, including motor homes * * *."

Mallard Coach admitted that it assembled Dillow's motor home. The warranty given to the Dillows by Cecil Caudill at the time of the purchase of the motor home came from Mallard Coach Company. Mallard Coach is a manufacturer of motor homes as a matter of law, and the manufacturer of the motor home in this case as a matter of fact, and reasonable minds could not conclude otherwise. .

The trial court did not err in granting Dillow summary judgment on the issue of Mallard Coach's liability under Ohio's Lemon Law. Further, the court did not err in ordering Mallard Coach to pay damages to Dillow for violation of that statute. Mallard Coach's first assignment of error is not well taken and is overruled.

Our analysis in this assignment of error predetermines the result in the second assignment of error.

SECOND ASSIGNMENT OF ERROR

"The court erred in dismissing General Motors Corporation as a party defendant in view of the fact that genuine issues of material fact exist with respect to General Motors' liability herein."

Mallard Coach asserts that the trial court transformed General Motors' Civ.R. 12(B)(6) motion into a motion for summary judgment. Mallard Coach further asserts that the trial court erred in dismissing General Motors as a party without resolving the cross-claim between Mallard Coach and General Motors. We agree.

■ A court must notify all parties when it converts a motion to dismiss for failure to state a claim into a motion for summary judgment at least fourteen days before the time fixed for a hearing. *Petrey v. Simon* (1983), 4 Ohio St.3d 154, 4 OBR 396, 447 N.E.2d 1285. Even if the trial court had converted General Motors' motion to dismiss into one for summary judgment with the requisite *Petrey* notice, we believe it would have been error because there are genuine issues of law and fact still to be resolved.

In General Motors' motion to dismiss, it refers to this court's earlier opinion in the matter, stating that this court's opinion held Mallard Coach to be solely liable to the Dillows under the Lemon Law, thereby excluding General Motors from any liability. We believe that General Motors misread this court's earlier opinion. The question of whether General Motors is liable to Mallard Coach on its cross-claim for indemnity or contribution is still an unresolved genuine issue of material fact. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

■ As noted above, we have given R.C. 1345.71 *et seq.* its most reasonable construction by holding that General Motors is exempt from liability for defective products added on to its chassis. It would be unreasonable, however, and a distortion of the statute to construe the statute to hold that General Motors is exempt from liability for a defective chassis *because* cold storage, cooking, eating or sleeping facilities were added to the chassis.

Mallard Coach, as a manufacturer, selected the General Motors chassis as a component of the motor home it manufactured and as such a manufacturer is liable under the Lemon Law. Nowhere in that statute is there any language which might be construed to hold that a supplier of a defective chassis is not liable to the purchaser of its defective product.

The trial court erred in dismissing General Motors as a party with prejudice because Mallard Coach's cross-claim against General Motors on its face states a viable claim for relief. Our holding does not, of course, determine whether the

chassis was defective or whether General Motors is liable to Mallard Coach, but only that these questions have to be determined by the trial court after an evidentiary hearing.

Mallard Coach's second assignment of error is well taken and is sustained.

The decision of the trial court is affirmed as to Mallard Coach's liability and payment of damages to Fred Dillow, through his executrix, Edna Dillow. The decision of the trial court dismissing General Motors as a party is reversed and this case is remanded to the trial court for further proceedings on Mallard Coach's cross-claim against General Motors.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STEPHENSON, P.J., and HARSHA, J., separately concur.

STEPHENSON, Presiding Judge, concurring.

I concur in the judgment of the majority, but write separately to address the meaning and proper interpretation of R.C. 1345.71(D).

R.C. 1345.71 reads as follows:

"(D) 'Motor vehicle' means any passenger car or noncommercial motor vehicle as defined in section 4501.01 of the Revised Code, or *those parts of any motor home, as defined in section 4501.01 of the Revised Code, that are not part of the permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping,* but does not mean any manufactured home as defined in division (O) of section 4501.01 of the Revised Code or recreational vehicle as defined in division (Q) of that section." (Emphasis added.)

R.C. 4501.01, in turn, defines "recreational vehicle" as follows:

"(Q) 'Recreational vehicle' means a vehicular portable structure designed and constructed to be used as a temporary dwelling for travel, recreational, and vacation uses and being classed as follows:

"(1) 'Travel trailer' means a nonself-propelled recreational vehicle not exceeding an overall length of thirty-five feet, exclusive of bumper and tongue or coupling, and includes a tent-type fold-out camping trailer as defined in division (S) of section 4517.01 of the Revised Code.

"(2) *'Motor home'* means a self-propelled recreational vehicle constructed with permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping.

"(3) 'Truck camper' means a nonself-propelled recreational vehicle, without wheels for road use, and designed to be placed upon and attached to a motor vehicle. Truck camper does not include truck covers which consist of walls and roof but do not have floors and facilities for using it as a dwelling." (Emphasis added.)

Read literally, R.C. 1345.71(D) includes parts of a motor home in its definition of "motor vehicle" and then excludes motor homes in their entirety—all within the same sentence. Despite this apparent contradiction, I agree with the majority that the General Assembly intended to include portions of motor homes as motor vehicles covered under the Lemon Law.

In the construction of a statute, the purpose in every instance is to ascertain and give effect to legislative intent. *Carter v. Youngstown* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63; *State ex rel. Sparks v. Weber* (1933), 48 Ohio App. 60, 1 O.O. 14, 192 N.E. 386. The legislative intent is to be sought first in the language of the statute itself, *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 65 O.O.2d 296, 304 N.E.2d 378, and, if ambiguous, by resort to application of well-settled rules of interpretation. See *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 573 N.E.2d 77; *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370; *Weber, supra.*

In applying these basic rules of statutory construction to the statute at issue herein, we look first to the language of the statute itself. Upon so doing, it is apparent the statute is ambiguous. In one portion of R.C. 1345.71(D), certain parts of motor homes are included in the definition of "motor vehicle," while later in that same sentence recreational vehicles (and thus motor homes) are excluded. Thus, we must resort to interpretation of the statute. *Gulf Oil Corp. v. Kosydar* (1975), 44 Ohio St.2d 208, 73 O.O.2d 507, 339 N.E.2d 820.

It is a cardinal rule of statutory construction that significance and effect should be accorded to every word used. *Wachendorf, supra.* In construing R.C. 1345.71(D), it appears that the General Assembly intended to include certain parts of motor homes within the definition of "motor vehicles" covered by the "Lemon Law." Any other construction would render nugatory the above italicized language of R.C. 1345.71(D). *Wachendorf, supra.* The question then becomes how to reconcile this with the subsequent exclusion of all recreational vehicles from the definition of "motor vehicle."

The two provisions are reconcilable if we read the italicized portion of R.C. 1345.71(D) to provide that only certain parts of a motor home are a "motor vehicle" covered under the "Lemon Law" and when we read the exclusion of recreational vehicles from the definition of "motor vehicle" as simply *reinforcing* the italicized language, *i.e.*, certain *parts* of a motor home are a motor vehicle

covered under the Lemon Law, but the *entire* motor home is not. In this way, we are able to give effect and meaning to both portions of the statute. Thus, while the majority interprets this provision to mean that manufacturers are liable for the defects in the products they manufacture, I interpret this provision more narrowly, to exclude from coverage under the Ohio "Lemon Law" those parts of a motor home which are part of the permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping.

Accordingly, I concur in the judgment of the majority.

HARSHA, J., concurs in the foregoing opinion.