**In Re: Holly and Laura CADDARETTE,**
Debtor(s).

No. 05–71505.

United States Bankruptcy Court, N.D. Ohio.

July 20, 2006.

Lucinda J Weller, Toledo, OH, for debtors.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court on the Trustee's Motion for Turnover, and the Debtors' objection thereto. At the Hearing held on this matter, the Court directed the Parties to file briefs in support of their respective positions. The Court is now in receipt of the Parties' briefs, and after carefully considering the arguments raised therein, finds, for the reasons that will now follow, that the Trustee's Motion for Turnover should be Granted.

## DISCUSSION

By way of her Motion for Turnover, the Trustee seeks to obtain possession of a 2002 Ford Mustang. Pursuant to 28 U.S.C. § 157(b)(2)(E), a request for an order to turn over property of the estate is a core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. 28 U.S.C. §§ 157(a)/(b)(1) and 1334.

On the Trustee's Motion for Turnover, none of the factual circumstances are materially in dispute. In October of 2005, the Debtors filed a joint petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Prior to the commencement of their bankruptcy case, the Debtors' minor son, Dustin, purchased the motor vehicle constituting the subject of the Trustee's Motion for Turnover.

In purchasing the vehicle, Dustin used funds he received from an inheritance. After the purchase, Dustin assumed all financial responsibility for the vehicle, including obtaining, under his name, a policy of insurance. Title to the vehicle, however, was placed and continues to remain in the name of the Debtor, Holly Caddarette. According to the Debtors, this arrange-

ment was necessary because "a minor child cannot title a motor vehicle in their name." (Doc. No. 27, at pg. 2).

 The Trustee's Motion for Turnover is made pursuant to 11 U.S.C. § 542(a). Under this section, anyone holding property of the estate is required to deliver it to the trustee. *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 (10th Cir. 1999). In this case, the focus of the Parties' dispute centers on whether the vehicle, titled in the Debtor's name, but purchased by the Debtors' son, a nondebtor, became "property of the estate," and thereby subject to a § 542(a) action for turnover.

Section 541(a) of the Bankruptcy Code provides that, upon the filing of a petition in bankruptcy, an estate is created comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." Focusing solely on the name set forth in the certificate of title, it is the Trustee's position that the vehicle, which is not encumbered by any liens, is the exclusive property of Holly Caddarette's bankruptcy estate, and thus subject to sale for the benefit of his creditors.

In their objection, the Debtors argue that the Trustee is not entitled to administer the vehicle on behalf of their estate because, although not titled in his name, their son, Dustin Caddarette, is the actual owner of the vehicle, having assumed all of the vehicle's costs, including its purchase price. Couched in legal terms, it is the Debtors' position that the vehicle is held in trust for the benefit of their son, with the name on the certificate of title represent-

ing only legal title. Accordingly, the Debtors maintain that the vehicle is excluded from their estate by the operation of § 541(d) which provides that where a debtor holds bare legal title without any equitable interest, the estate acquires only bare legal title without any equitable interest.[1]

The respective positions taken by the Parties raise an issue formerly addressed by this Court in *In re Gordy*, 39 B.R. 33 (Bankr.N.D.Ohio 1984): whether, under Ohio law, a person not named in a vehicle's certificate of title may claim, through extrinsic evidence, an ownership interest in a debtor's vehicle; or whether the person named in the certificate of title constitutes conclusive evidence on the matter of ownership.

In *In re Gordy*, a mother and her son, as co-makers, signed a promissory note for the purchase of truck. Subsequently, the mother sought the protections of the Bankruptcy Code, first seeking to formulate a plan of reorganization, but later having her case converted to one under Chapter 7 of the Code. At the time of conversion, the truck, co-signed for by the son, was titled solely in his mother's name. Based on this, the trustee, after successfully objecting to the mother's claim of exemption in the truck, brought an action for turnover. The mother objected, making essentially the same argument as that now made by the Debtors: "that since her son was the only user of the vehicle, that he had made all the payments to the creditor, and that the intent of all parties involved was that the truck belonged to him, the

---

1. This section provides, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

truck should not properly be included in the estate." *Id.* at 34.

The Court, however, rejected the mother's argument as a matter of law. In doing so, the Court relied on O.R.C. § 4505.04 which, in relevant part, provides that:

(A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, . . . .; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to the motor vehicle, for a valuable consideration.

(B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

(1) By a certificate of title,

Based then upon the mandates of these provisions, this Court in *In re Gordy* set forth that *only* the person named in a vehicle's certificate of title may be recognized as the vehicle's owner. Accordingly, the Court held that, regardless of the intent of the parties, when a debtor is named as the owner of a motor vehicle on the certificate of title, the motor vehicle becomes property of the estate, subject to administration by the trustee. *Id.*

However, as pointed out by the Debtors, since the issuance of this Court's decision *In re Gordy*, other courts, when addressing this exact issue, have held to the contrary. The Debtors specifically point to the case of *In re Ward*, 300 B.R. 692 (Bankr.S.D.Ohio 2003). Another Judge of this Court, the Honorable Judge Whipple, has also held the same in two unpublished decisions. *Kovacs, Trustee v. Burr (In re Burr)*, Ch. 7 Case No. 01–32712, Adv. No. 01–3174 (Bankr.N.D.Ohio Feb. 7, 2002); *In re Groves*, Ch. 7 Case No. 05–76317 (Bankr.N.D.Ohio April 13, 2006). Likewise, in its discussion in *Bavely v. Powell (In re Baskett)*, 219 B.R. 754 (6th Cir. BAP1998), the Bankruptcy Appellate Panel for the Sixth Circuit found that the name set forth in the certificate of title is not dispositive.

In *In re Baskett*, the overall issue on appeal was whether the bankruptcy court abused its discretion when it denied a debtor's motion to have the bankruptcy trustee's default judgment for turnover set aside. *Id.* at 758. To decide the matter, the Court looked to Rule 60(b) of the Federal Rules of Civil Procedure which allows relief from judgment for certain specified reasons. Of the reasons specified under Rule 60(b), the Court in *In re Baskett* began by noting that the only arguable basis to have the judgment set aside was if debtor allowed the entry of the default on account of "excusable neglect." *Id.*

In ultimately determining that the bankruptcy court had abused its discretion in denying the debtor's motion, the Court in *In re Baskett* considered a variety of factors that pertain to the existence of "excusable neglect" under Rule 60(b). Relevant here, the Court looked to whether the debtor had, contrary to the bankruptcy court's determination, raised a "meritorious defense" to the trustee's complaint for turnover. To this end, four possible defenses were proposed: the existence of fraud on the part of the debtor; the creation of a constructive trust or an express trust; and the existence of artisan's lien. Of these defenses, the Court found the third, the existence of an express trust, persuasive, rejecting the trustee's argument that only those named in a certificate of title under § 4505.04 may maintain an interest in a motor vehicle. As other

courts have,[2] in coming to this conclusion, the Court in *In re Baskett* found persuasive the reasoning employed by the bankruptcy court in *In re Amos*, the first reported case to have accepted the express trust theory for certificates of title. 201 B.R. 184 (Bankr.N.D.Ohio 1996).

In a now familiar scenario, the case of *In re Amos* involved a debtor, prepetition, being named on a vehicle's certificate of title as an accommodation for a third-party, in this case, this being the debtor's boyfriend whose poor credit prevented him from personally purchasing a vehicle. In turning down the trustee's request for turnover, the court found that such an accommodation created an express trust and that there was "no reason to expect that the Ohio courts would interpret section 4505.04 to invalidate express trusts where doing so would further none of the purposes the Supreme Court has said that the section was intended to achieve." *Id.,* at 187. The purposes referenced here was that previously formulated by the Ohio Supreme Court in *Hughes v. Al Green, Inc.,* wherein the Court set forth that "the purpose of the Certificate of Title Act is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to and ownership of motor vehicles." 65 Ohio St.2d 110, 115, 418 N.E.2d 1355, 1358 (1981).

In this way, the court in *In re Amos* also noted that with respect to personal property, such as vehicles, the trustee does not obtain the status of a bona fide purchaser, a class of persons the Act was meant to protect. Rather, the trustee only obtains the status of a judgment lien creditor, a class of persons not cited to by the Ohio Supreme Court in *Hughes* as protected by the Certificate of Title Act. Interpretively then, by affording weight first to the stat-

ute's purpose and operational effect, the court's decision in *In re Amos*, and thus by extension *In re Baskett*, is based upon a functional approach. However, while this approach, by evidently attempting to arrive at a fair result, has a certain appeal, it is legally problematic in this particular statutory application.

■ When construing a statute, Ohio law adopts a plain meaning approach. *State v. Hairston,* 101 Ohio St.3d 308, 804 N.E.2d 471 (2004). Thus, "where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation." *State of Ohio v. Kreischer,* 109 Ohio St.3d 391, 848 N.E.2d 496 (2006). An unambiguous statute is to be applied, not interpreted. *Sears v. Weimer,* 143 Ohio St. 312, 55 N.E.2d 413 (1944), *paragraph five of syllabus.*

On the legal matter before the Court, the directive of § 4505.04 is clear and unambiguous. In both paragraphs (A) and (B) of § 4505.04 it is provided that, unless evidenced by a certificate of title, no person shall acquire nor may a court recognize the *"interest* of any person in or to any motor vehicle . . . ." (emphasis added). This directive is mandatory, not permissive, beginning with the imperative that "no court *shall* recognize the right . . ." (emphasis added). *See Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917,* 65 Ohio St.3d 532, 534, 605 N.E.2d 368 (1992) ("the word 'shall' denotes that compliance with the commands of that statute is mandatory.").

Equally important, the statute makes no distinction or qualification on the types of "interests" that are not to be recognized— All interests are not to be recognized. Yet, by definition, a trust is composed of

two different estates: a legal one and an equitable one, both of which are recognized under Ohio law as legally distinct "interests" in property. *See Hill v. Irons,* 160 Ohio St. 21, 27, 113 N.E.2d 243 (1953); *Armstrong v. Lindley,* 10 Ohio App.3d 320, 322–23, 462 N.E.2d 451, 453–54, (1983).

It would thus seem rather odd to exclude from the reach of § 4505.04 an equitable interest in a trust *res,* but not the legal interest. In this way, a court is not to scour for ambiguity. Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling. *State v. Porterfield,* 106 Ohio St.3d 5, 7, 829 N.E.2d 690 (2005). In fact, consistent with this approach, precedent in Ohio has held that, unless otherwise provided, a statute referring to an "interest" in property should be read to encompass both a trust's legal and equitable components. *Armstrong v. Lindley,* 10 Ohio App.3d 320 at 323, 462 N.E.2d 451.

■ To be sure, a "statute should be interpreted to give a reasonable result consistent with legislative purpose and intent and not to defeat that intention or to render it a nullity." *Peltier v. Ohio Radio, Inc.,* 25 Ohio App.2d 84, 88, 54 O.O.2d 119, 121, 266 N.E.2d 575, 577 (1970). Resultantly, a statute which may first appear to be clear, may later be found to be ambiguous if, in its application, a result demonstrably at odds with the intention of the statute would occur. *Dillow v. Mallard Coach Company,* 83 Ohio App.3d 801, 808, 615 N.E.2d 1076, 1080 (1992), (per concurring opinion of Stephenson, P.J.). But declining to recognize an unnamed beneficial interest in a motor vehicle can hardly be said to be at odds with the intention of § 4505.04. To the contrary, it increases certainty in Ohio's vehicle registration system, thereby furthering one of the underlying purposes of the statute: "to create an instrument evidencing title to and ownership of motor vehicles."

■ Furthermore, the rationale offered in *In re Amos*—that the purpose of the Certificate of Title Act would not be frustrated by recognizing the existence of an undisclosed equitable interest in a motor vehicle—does not mean that the statute is ambiguous. At most, it only shows that recognizing the existence of an undisclosed trust beneficiary would not contradict the Act's purpose. However, while this may or may not be true, it still leaves open the impediment just discussed: it requires that the term "interest" in § 4505.04 be read to include only a person's legal interest in a motor vehicle, not their equitable interest. It is not, however, a court's function to supply or delete language from a statute to reach a certain result. *Vought Industries, Inc. v. Tracy,* 72 Ohio St.3d 261, 265, 648 N.E.2d 1364 (1995). "There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for." *Id., quoting State ex rel. Foster v. Evatt,* 144 Ohio St. 65, 29 O.O. 4, 56 N.E.2d 265 (1944).

Even from a practicable perspective, the Debtors' position, also raises the question, where would this end? For example: Should this Court, despite the directive of § 4505.04, recognize other undisclosed interests in motor vehicles such as that of co-owners, or lien holders, or even a purchaser? Perhaps inchoate interests in motor vehicles should also be recognized. Going further down this road, in the case of a trust, would it be permissible to find that the name on the certificate of title represented not the legal interest, but the equitable interest? Put differently, where the existence of an undisclosed express trust is asserted, should it be presumed

that the person named on the certificate of title holds the legal interest in the vehicle?

In bankruptcy, these concerns become especially acute with respect to motor vehicles. In many instances, a debtor's vehicle will be their most valuable asset of personal property, thereby providing a large incentive to the debtor for the assertion of an undisclosed third-party interest in the vehicle, whether a trust, security interest or otherwise. In turn, this would place the bankruptcy trustee at the mercy of claims that could not be directly substantiated. For example, a filing spouse, having title to a vehicle, could easily make the claim that the nonfiling spouse was the intended beneficiary of the vehicle. Recognizing an undisclosed beneficial interests in a motor vehicle, therefore carries with it the real potential to encourage false claims, or at the very least, encourage litigation—hardly laudable goals and again at odds with the statute's purpose of evidencing ownership to motor vehicles.

However, as also recognized by the bankruptcy court in *In re Amos*, the bankruptcy trustee with respect to personal property, such as vehicles, only obtains the status of a judicial lien holder who—unlike a bona fide purchaser, the status of which the trustee takes only with respect to real property—often takes subject to prior transfers even if not disclosed. 11 U.S.C. § 544(a)(1)(3). The reason for this: a lien creditor, unlike the bona fide purchaser, does not rely on the status of the debtor's property when extending credit. A prime example: Ohio law provides by statute that with respect to real property, until a conveyance is recorded it is "fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument." O.R.C. § 5301.25(A). Therefore, by negative implication, a judgment-lien creditor, their interest not being protected by the statute, may have their interest in a debtor's real property defeated by a previous conveyance even if unrecorded. *Basil v. Vincello* 50 Ohio St.3d 185, 191, 553 N.E.2d 602 (1990); *University Associates v. Sterling Finance Co.*, 37 Ohio App.2d 17, 305 N.E.2d 924, 924 (1973).

However, the general rule, that the interest of a judicial lien holder in a debtor's property is subordinate to that of a subsequent transfer, even if not disclosed, is not absolute. It may, as with any priority scheme in property, be modified by statute. And in this way, it can only be concluded that § 4505.04 effectuates such a modification. As already discussed, the language of § 4505.04, in very certain terms, directs this Court not to recognize "any" interest in a motor vehicle unless it is set forth in the certificate of title. No allowance is made for certain types of transfers such as trust. Nor does the statute, unlike O.R.C. § 5301.25(A), *supra,* expressly provide that some classes of transferees, but not others such as judgment lien holders, are entitled to the statute's protection. For all these reasons then, this Court is simply unable to harmonize recognizing an undisclosed interest in a trust with § 4505.04's mandate that *all* interests in motor vehicles be disclosed in the certificate of title.

Still, this Court is bound to follow applicable precedent, and the decision rendered by Bankruptcy Appellate Panel in *In re Baskett,* wherein the Court found it proper to recognize a trust not disclosed in the certificate of title, has not been overruled. However, in matters such as this involving the application of state law, following precedent means first and foremost looking to any decision reached by the highest state court, or in the absence of a dispositive decision by the highest state court, the Court is to predict how the highest state court would rule. *See, e.g., In re Sankey,*

307 B.R. 674, 678 (D.Alaska 2004). In this way, the Court in *In re Baskett*, citing to in *In re Amos*, stated that there was "no reason to expect that the Ohio courts would interpret section 4505.04 to invalidate express trusts where doing so would further none of the purposes the Supreme Court has said that the section was intended to achieve." 219 B.R. at 762. However, regardless if this was correct at the time, its propriety has since been called into serious doubt.

In *Saturn of Kings Automall, Inc. v. Albert Leasing, Inc.*, the Ohio Supreme Court again had occasion to address the breadth of § 4505.04. 92 Ohio St.3d 513, 751 N.E.2d 1019 (2001). In *Saturn*, two dealers held titles to a number of vehicles that they then sold to another dealer, Gallatin. After taking possession of the vehicles, but without paying for the vehicles, Gallatin sold the vehicles to a third party, Albert Leasing. But despite paying Gallatin for the vehicles, Albert Leasing could not obtain title to the vehicles as Gallatin had yet to pay the dealers. Litigation ensued, with the auto dealers arguing that Ohio's Certificate of Motor Vehicle Title Law, O.R.C. § 4505.04(A), absolutely governed disputes involving competing claims of ownership of motor vehicles. On the other side, Albert Leasing took the position that under these conditions, Ohio's UCC, § 1302.44, involving the entrustment of motor vehicles, took precedence.

■ On the parties' respective positions, the Court set forth that the "primary issue presented for our review is whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title." *Id.*, at 515, 751 N.E.2d 1019. Although initially couching the issue in terms of just legal ownership, the Court in *Saturn*, in looking at two of its prior decisions,[3] broadened its

approach, holding that "4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile." *Id.*, at 519, 751 N.E.2d 1019. And from this, the Court in *Saturn* then held that:

> in determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code. In this matter, [the dealers] retained possession of the certificates of title to the motor vehicles at issue in this dispute. Pursuant to R.C. 4505.04(A), title to and, thus, ownership of a motor vehicle in this context does not pass without issuance or delivery of the certificate of title. Because the certificates of title were never assigned and delivered to Gallatin, Gallatin was never the lawful owner of the vehicles and, therefore, could not lawfully pass title to appellee. [The dealers], by retaining possession of the certificates of title, are the rightful owners of the motor vehicles and, as such, are entitled to the proceeds of sale placed in escrow.

*Id.*, at 520, 751 N.E.2d 1019. For this decision, the Court in *Saturn* also looked to the statute's purpose, setting forth one not previously mentioned by either the bankruptcy court in *In re Amos* or by the Appellate Panel in *In re Baskett*, and one that specifically applies to the Trustee's status as a judgment lien creditor: that § 4505.04(A)'s function of determining ownership interests in vehicles was meant to apply to "contests between the alleged owner and lien claimants." *Id.*, at 518, 751 N.E.2d 1019, *citing Kelley Kar Co. v. Finkler*, 155 Ohio St. 541, 44 O.O. 494, 99 N.E.2d 665 (1951).

Looked at here, it becomes but a small step to conclude that the Ohio Supreme

---

**3.** *Hughes v. Al Green, Inc.*, 65 Ohio St.2d 110, 19 O.O.3d 307, 418 N.E.2d 1355 (1981); *Smith v. Nationwide Mut. Ins. Co.*, 37 Ohio St.3d 150, 524 N.E.2d 507 (1988).

Court would now interpret § 4505.04 as absolutely controlling on issues of ownership as between rival claimants including that of judgment lien creditors. And when setting this intervening precedent on top of the plain meaning approach already applied by the Ohio Supreme Court to issues of statutory interpretation, it becomes impossible to accommodate the conclusion reached by the courts in *In re Amos* and in *In re Baskett:* that the Ohio Supreme Court would interpret § 4505.04 as permitting a rival claimant's interest in a vehicle—whether a bona fide purchaser, lien holder or otherwise—to take subject to an undisclosed trust. Even from a functional analysis, this has continuity.

The function of § 4505.04(A), like other recording statutes, is to provide notice to third parties who may obtain an interest in the property, thereby adding a layer of certainty on issues of ownership. *Accord Wead v. Lutz,* 161 Ohio App.3d 580, 584, 831 N.E.2d 482, 486 (2005). But as already alluded to earlier, to read § 4505.04 as not absolutely controlling on issues of ownership goes contrary to this function as it carries with it the potential for subterfuge because at least to certain classes of persons—the breadth of which would have to be established through litigation—a vehicle's certificate of title has no efficacy.

There is also nothing fundamentally unfair with not recognizing undisclosed trusts in motor vehicles. First, nothing in § 4505.04(A) prevents the creation of a trust in a motor vehicle. Rather, § 4505.04(A) simply requires that for such an interest to prevail over that of a rival claimant in the vehicle, the existence of the trust must be disclosed in the certificate of title. Effectuating such a transfer is neither a burdensome nor costly process. In a similar way, the Debtors' position that their arrangement as to the Mustang's title was undertaken because their son, a minor, could not obtain title to the vehicle does not find support. Ohio Revised Code § 4505.03, entitled "Minors disposing of or acquiring motor vehicles," does not prohibit a minor from obtaining title to a motor vehicle, but rather only conditions the issuance of the title on the minor's parent or guardian signing the application for the certificate of title.

For all the reasons just discussed, the Court finds that, as a matter of law, § 4505.04 compels that the name, as set forth on a vehicle's certificate of title, controls when making a determination as to property of the estate under § 541, and hence a trustee's right for turnover under § 542. Accordingly, with the 2002 Ford Mustang titled solely in the name of the Debtor, Holly Caddarette, no evidence may be introduced regarding the existence of an express trust created in the vehicle for the benefit of the Debtors' son, Dustin.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that Motion of the Trustee, Patricia Kovacs, for the Turnover of a 2002 Ford Mustang titled in the name of the Debtor, Holly Caddarette, be, and is hereby, GRANTED.